COMMONWEALTH *vs.* JOSEPH DEPALMA.

No. 94-P-1370.

Suffolk. September 11, 1996. - December 17, 1996.

Present: KASS, SMITH, & LENK, JJ.

*Controlled Substances. Practice, Criminal,* Required finding, Instructions to jury, Assistance of counsel, Argument by prosecutor.

At the trial of an indictment for trafficking in cocaine there was ample evidence to prove that the defendant knowingly possessed cocaine [801-802] and that the defendant had the specific intent to distribute it [802].

At the trial of an indictment for trafficking in cocaine on a joint venture theory, the evidence did not warrant a jury instruction concerning joint possession of a controlled substance following the ruling in *Commonwealth* v. *Johnson*, 413 Mass. 598, 604 (1992), and consequently trial counsel was not ineffective for not requesting that such an instruction be given. [802-804]

At a criminal trial, there was no reversible error in the prosecutor's comments in closing argument, in the context of the entire argument, and in light of the judge's instruction to the jury and the evidence at trial; further, trial counsel was not ineffective in not objecting to the comments. [804-805]

INDICTMENTS found and returned in the Superior Court Department on August 16, 1990.

The cases were tried before *Barbara A. Dortch-Okara,* J.

*Maxine Sushelsky* for the defendant.

*Stephen D. Fuller,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant appeals from his convictions on indictments charging him with conspiring with Kenneth McKenzie to possess, with intent to distribute, cocaine and trafficking in 200 grams or more of cocaine.[1] On appeal, he claims

---

[1]Before trial commenced on the trafficking indictment, the defendant waived his right to have the conspiracy indictment severed from the trafficking indictment. See Mass.R.Crim.P. 9(e), 378 Mass. 861 (1979).

that: (1) the judge committed error in denying his motion for a required finding of not guilty on the trafficking charge; (2) his trial counsel was ineffective in failing to request a jury instruction regarding the distribution of cocaine between joint possessors, and by failing to object to the prosecutor's explanation of "distribution" in his closing argument; and, (3) certain remarks of the prosecutor in his closing argument constituted reversible error. We affirm.

1. *Denial of defendant's motion for required finding of not guilty.* The defendant claims that the judge committed error in denying his motion for a required finding of not guilty on the trafficking charge because the evidence was insufficient, as matter of law, to prove that (1) the defendant knew that the substance at issue was a controlled substance, and (2) the defendant had the specific intent to distribute the cocaine.

The trafficking charge was tried on the theory that the defendant was engaged in a joint venture with McKenzie. We set forth the facts in the light most favorable to the Commonwealth. See *Commonwealth* v. *Nichypor,* 419 Mass. 209, 210 (1994).

In the summer of 1990, one Cipolle, an informant to the State police, was introduced to McKenzie, who asked Cipolle whether he knew a good source from whom to buy cocaine in large quantities. In response to McKenzie's inquiry, Cipolle told him that he knew a person who could supply McKenzie with kilograms ("kilos") of cocaine. Cipolle gave McKenzie the name and beeper number of his friend, Paul.

On July 31, 1990, at approximately 7:30 P.M., Cipolle and McKenzie arrived at a restaurant in Revere, where Cipolle introduced McKenzie to Paul. Unknown to McKenzie, Paul was a State police trooper who worked undercover for the Suffolk County district attorney's office. McKenzie told Paul that he and his partner had been buying kilos of cocaine, that the price was going up, and that they were looking for a reliable, less expensive source. After a discussion of price and quantity, Paul told McKenzie that he could sell one kilo for $28,000, three kilos for $26,000 per kilo, and five kilos for $24,000 per kilo. McKenzie offered to pay $24,000 for one kilo but Paul stated that the price was too low. They parted with Paul giving McKenzie his beeper number.

On August 9, 1990, McKenzie contacted Paul by beeper. As a result, Paul telephoned him. McKenzie told him that he

and his partner, whom he identified as "Joey," were interested in doing business with him and asked whether he may give Paul's beeper number to his partner. Paul agreed, and Joey, the defendant, contacted Paul and arranged a meeting at a location in Revere.

Paul arrived at the meeting place prior to the defendant and parked in a parking area adjacent to the seawall along the beach. Other troopers were parked at various locations around the parking area. Paul had with him 2.5 kilos of cocaine.

McKenzie arrived with the defendant, whom he introduced to Paul. McKenzie then waited a few feet away while the two conversed. The defendant told Paul that his source's price was increasing to $33,000 a kilo and that he was looking for another source who could supply him with two to three kilos of cocaine a week. Paul quoted the same prices that he had given to McKenzie. The defendant offered to buy one kilo of cocaine for $28,000. Although Paul indicated to the defendant that he had at least one kilo of cocaine with him, the defendant did not have the $28,000 with him. As a result, they agreed to meet at the same place to complete the transaction.

Later that day, Paul and the defendant met as agreed. The defendant approached Paul's automobile and told him that the money was in the car with McKenzie. Paul told the defendant to get the money and bring it back to him so that they could conclude the transaction inside Paul's automobile.[2]

The defendant went to his automobile and then returned to Paul's motor vehicle carrying a box which later proved to contain $28,000. Paul, in turn, handed the defendant a bag containing three wrapped packages and told the defendant to take either of the larger packages, each containing a kilo of cocaine. The defendant took one of the packages, and at the defendant's request, Paul gave him a sharp implement on his key ring to cut into the package. While the defendant was cutting into the package's outer wrapper, Paul activated his brake lights to signal the waiting police officers that the transaction was occurring. They then approached Paul's vehicle, arrested the defendant and ostensibly arrested Paul. At the

[2]Paul testified that in a "reverse operation," where the police are selling the cocaine, they are prohibited from either giving a sample of the product or letting the product leave the control of the police at any time for any reason.

time of Paul's arrest, McKenzie was standing nearby, on the sidewalk near the seawall. When he saw the defendant being arrested, McKenzie jumped over the seawall and started to run. He was captured and placed under arrest.

General Laws, 94C, § 32E(*b*), "explicitly imposes liability for cocaine trafficking only upon proof of knowing and intentional possession of cocaine." *Commonwealth* v. *Sabetti*, 411 Mass. 770, 781 (1992). The defendant argues the evidence was insufficient to prove that he knew that the substance given to him by Paul was cocaine, or any other controlled substance. We note that the Commonwealth is required to prove only that the defendant knew that he possessed a controlled substance, not necessarily that he knew that he possessed cocaine. *Commonwealth* v. *Rodriguez*, 415 Mass. 447, 454 (1993).

A defendant's knowledge that he possessed a controlled substance "may be, and generally is, proved by circumstantial evidence; and it may be inferred from a great variety of circumstances." *Commonwealth* v. *LaPerle*, 19 Mass. App. Ct. 424, 426-427 (1985), quoting from *Commonwealth* v. *Altenhaus*, 317 Mass. 270, 273 (1944). It is permissible to infer the defendant's knowledge based on circumstantial evidence where the inference "is reasonable and possible; it need not be necessary or inescapable." *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 567 (1980). However, "[i]n the absence of other evidence, possession of an unopened package . . . containing drugs does not warrant an inference beyond a reasonable doubt that the defendant possessed the drugs knowingly." *Commonwealth* v. *Sheline*, 391 Mass. 279, 284 (1984). Here, there was ample evidence to prove the defendant knowingly possessed cocaine.

The defendant was introduced to Paul by his partner, McKenzie, for the express purpose of negotiating the purchase of cocaine. During the negotiations, the defendant offered to buy one kilo of cocaine for $28,000. The offer was accepted. While the sale was taking place, the defendant gave Paul $28,000 in cash, the agreed price for one kilo of cocaine. These circumstances warranted a reasonable inference by the jury that the defendant believed that the package he received from Paul contained cocaine, for which he had just paid Paul $28,000. Therefore, even though the defendant did not open the package of cocaine before he was arrested, evidence of the circum-

stances of the purchase of the cocaine established that the defendant understood that the package contained cocaine. See *id.* at 283-285 (at trial of an indictment charging defendant with knowing possession of cocaine with intent to distribute, evidence of the circumstances in which the defendant received an unopened package warranted the conclusion that the defendant knew there was cocaine in the package).

The defendant also claims that the evidence was insufficient to prove that at the time the alleged offense was committed, he had the specific intent to distribute the cocaine. We disagree.

The defendant bought one kilo, 1,000 grams, of cocaine from Paul, an amount that is sufficient to warrant an inference beyond a reasonable doubt that he intended to distribute it. See *Commonwealth* v. *Ridge,* 37 Mass. App. Ct. 943, 945 (1994) (possession of 636.8 grams of cocaine was sufficient to support an inference, beyond a reasonable doubt, of intent to distribute). See also *Commonwealth* v. *Fogarty,* 25 Mass. App. Ct. 693, 696, 701 (1988) (514 grams sufficient). Both the defendant and McKenzie had told Paul that their original supplier was raising his prices, and they were looking for a cheaper source who could supply them with two to three kilograms of cocaine a week. The large amount of cocaine bought by the defendant coupled with his (and McKenzie's) statements to Paul about future purchases supported a reasonable inference that the defendant was in the business of trafficking in cocaine.

The judge did not commit error in denying the defendant's motion for a required finding of not guilty.

2. *Jury instruction concerning distribution between joint possessors of a controlled substance.* The judge charged the jury that the word distribute

> "simply means to deliver from one person to another. This does not mean in the course of medical treatment or research, simply to deliver to another person. Now, delivery may be in exchange for money or it may be without charge. It may be free. It is not necessary that the Commonwealth prove that Mr. DePalma received or anticipated any money or anything of value in connection with the alleged anticipated distribution. The Commonwealth does not have to prove any sales, just that

the cocaine at issue in this case was intended to be passed from one person to another by the defendant."

"In deciding whether or not the defendant in this case had the specific intent to distribute cocaine, you may consider whether or not the defendant possessed more cocaine than is consistent with personal use. You may also consider the value of the controlled substance. Also, consider any evidence that you have on the level of purity of the alleged cocaine. This is an issue to be considered in the area of intent to distribute."

The judge also instructed the jury on the lesser included offenses of possession of cocaine and conspiracy to possess cocaine.

Shortly after their deliberations began, the jurors asked the following question: "If Mr. DePalma gave, or intended to give, Mr. McKenzie, as a co-joint venturer, his alleged share of the cocaine, does this constitute distribution?" The prosecutor and defense counsel agreed with the trial judge's written response that: "Distribution is the delivery of a controlled substance from one person to another person. It is up to you as the jury to determine if in these circumstances, the defendant possessed cocaine with the intent to distribute to Mr. McKenzie."

On appeal, the defendant claims that his trial counsel was ineffective because he did not request that the judge charge the jury in his main instructions and later in answer to the jury's question that, "Where two or more persons simultaneously and jointly acquire possession of a drug for their own use intending only to share it together, their only crime is simple joint possession." *Commonwealth* v. *Johnson*, 413 Mass. 598, 604 (1992). In *Johnson* the judge gave the following instruction which is based on the decision in *United States* v. *Swiderski*, 548 F.2d 445 (2d Cir. 1977):

"Where two or more persons simultaneously and jointly acquire possession of a drug for their own use intending only to share it together, their only crime is simple joint possession. But that [is] only limited to the situation when the persons acquire the drug simultaneously at the outset, when the persons are there at the acquisition together and simultaneously acquire."

*Commonwealth* v. *Johnson,* 413 Mass. at 604.[3]

However, the *Johnson* instruction is warranted only in those situations where the parties *simultaneously* and jointly acquire the controlled substance for their own use.[4] Because the defendant and McKenzie did not simultaneously acquire the cocaine, the *Johnson* instruction was not warranted.

Here, once McKenzie introduced the defendant to Paul, at the earlier meeting, the defendant assumed an active role in purchasing the drugs, and McKenzie no longer actively participated in the purchase. In fact, the defendant's own testimony shows that during the discussion between the defendant and Paul, where the defendant offered to purchase one kilo of cocaine for $28,000, McKenzie was far enough away from them so that he could not hear or participate in their conversation.

At the time that the actual purchase took place, McKenzie was not in the vehicle with Paul and the defendant. Thus he did not personally participate in any of the activities that the defendant performed in order to complete the purchase of the cocaine such as: 1) giving Paul the money; 2) selecting the specific kilo of cocaine that he would purchase; and, 3) cutting the packaging to examine the cocaine.

In sum, we hold that the trial counsel was not ineffective in failing to request the *Johnson* instruction because such an instruction was not warranted by the evidence.

3. *Prosecutor's comments on closing argument.* The defendant claims that certain of the prosecutor's comments during

---

[3]In *Commonwealth* v. *Johnson, supra,* the court approved of the judge's instruction, but also ruled that the judge did not err by refusing to give a more expansive instruction requested by the defendant, "to the effect that where two or more persons contribute money to acquire drugs but only one person carries out the purchase, they are guilty of mere possession since they are coowners of the drugs from the outset and intend only to share the drugs and not to distribute them." *Id.* at 604 & n.8.

[4]The *Johnson* court noted that the circumstances where the *Swiderski* rationale applies are limited. 413 Mass. at 605. Specifically, the court stated, "[a] review of the Federal decisions construing *United States* v. *Swiderski,* reveals that its holding has been 'limited to the passing of a drug between joint possessors who simultaneously acquire possession at the outset for their own use.'" *Ibid.,* quoting from *United States* v. *Rush,* 738 F.2d 497, 514 (1st Cir. 1984). In addition, the court cited *United States* v. *Wright,* 593 F.2d 105, 108 (9th Cir. 1979) ("*Swiderski* not applicable where drug not 'simultaneously and jointly' acquired"). *Commonwealth* v. *Johnson,* 413 Mass. at 605.

his closing argument constituted reversible error. There was no objection to the comments, and the defendant also claims that his trial counsel was ineffective in not objecting.

We have examined the prosecutor's comments "in the context of the entire argument, and in light of the judge's instruction to the jury, and the evidence at trial." *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 553 (1990). We hold, especially in view of the judge's instructions, that there was no error.

*Judgments affirmed.*