## Commonwealth vs. Valentine J. Rodriguez.

Suffolk. December 7, 2009. - April 27, 2010.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Controlled Substances. Practice, Criminal,* Required finding, Motion to suppress, Affidavit, Presumptions and burden of proof, Confrontation of witnesses. *Constitutional Law,* Search and seizure, Confrontation of witnesses. *Evidence,* Certificate of drug analysis, Expert opinion, Opinion.

At the trial of a criminal complaint charging, inter alia, distribution of cocaine and possession of cocaine, there was insufficient evidence to sustain the defendant's conviction of distribution, where no witness observed the transfer of drugs in either of two alleged sequential transactions, and where the Commonwealth failed to present evidence sufficient to establish beyond a reasonable doubt that the defendant during the second transaction distributed the drugs found in the possession of the alleged buyer; however, the evidence of the defendant's possession of cocaine was more than sufficient to sustain his conviction of that charge. [582-585]

A Boston Municipal Court judge erred in denying a criminal defendant's pretrial motion to suppress cocaine retrieved from the ground near the defendant, on the basis of the judge's finding that the cocaine had not been found on the defendant's person, and the judge's ruling that the cocaine therefore had not been seized, where the finding was not based on evidence at the hearing, and where there was no evidence whether the defendant was stopped before or after he dropped the drugs on the ground [585-587]; further, remand for a new motion hearing was required where neither the defendant's motion nor his accompanying affidavit articulated the basis of his suppression claim, and neither the Commonwealth nor the judge sought a more particularized affidavit or otherwise obtained clarification of the defendant's suppression claim, and where, despite the Commonwealth's failure to move to dismiss the motion or for a more particularized affidavit, the Commonwealth's request that the motion be denied without an evidentiary hearing communicated to the defendant and the judge its confusion as to the basis of the defendant's motion and therefore accomplished much the same purpose [588-590].

This court reversed a criminal defendant's judgment of conviction on an indictment charging possession of cocaine, and remanded the matter for a a new trial, where, given that the only evidence the substances at issue were cocaine came in the form of a certificate of drug analysis that was admitted without testimony by the analyst who conducted the testing, in violation of the defendant's right to confront the witnesses against him, it could not be said that the admission of the certificate was harmless beyond a reasonable doubt. [590-592]

At a criminal trial, it was error to admit in evidence a police officer's testimony explaining the use by police of code words to indicate that drugs have been recovered from a buyer, where the testimony essentially offered the officer's impermissible opinion that the defendant sold drugs. [592]

COMPLAINT filed in the Central Division of the Boston Municipal Court Department on September 25, 2006.

A pretrial motion to suppress evidence was heard by *Annette Forde*, J., and the case was tried before *Mark Hart Summerville*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Joseph M. Ditkoff*, Assistant District Attorney (*Gregory D. Henning*, Assistant District Attorney, with him) for the Commonwealth.

*Andrea Petersen* for the defendant.

GANTS, J. The defendant was convicted in the Boston Municipal Court Department of distribution of cocaine, in violation of G. L. c. 94C, § 32A (*a*); possession of cocaine, in violation of G. L. c. 94C, § 34; and distribution of cocaine within one hundred feet of a public park, in violation of G. L. c. 94C, § 32J. The Appeals Court reversed the judgments of conviction, set aside the verdicts, and remanded the case after concluding that the motion judge erred in denying the defendant's motion to suppress. *Commonwealth* v. *Rodriguez*, 74 Mass. App. Ct. 314 (2009). We granted the Commonwealth's application for further appellate review. We conclude that the evidence was insufficient as a matter of law to warrant a guilty finding on the two distribution counts and direct that a judgment of acquittal enter on those counts. We reverse the judgment of conviction of possession of cocaine, although on grounds different from those relied on by the Appeals Court, and remand the case for a new suppression hearing and trial.

1. *Evidence at trial.* Because the defendant challenges the sufficiency of the evidence, we summarize in detail the evidence, considering it in the light most favorable to the Commonwealth and reserving certain details for our analysis of the other issues raised on appeal. See *Commonwealth* v. *Farley*, 443 Mass. 740, 741, cert. denied, 546 U.S. 1035 (2005).

At approximately 1:40 P.M. on September 23, 2006, Detective

Robert Pieroway, a plainclothes Boston police officer assigned to a drug control unit, was traveling in the passenger seat of an unmarked police vehicle when he observed the defendant standing with a group of men in Franklin Square Park in the South End section of Boston. Detective Pieroway noticed a woman, later identified as Jessica Rivera, enter the park, stand beside the defendant, and then walk with the defendant to 10 East Brookline Street, in the courtyard of the Cathedral housing development. Outside 10 East Brookline Street, the defendant and Rivera met a man, Alex Cherizard,[1] on a bicycle, and the three individuals walked up the stairs to the front door of the building, where a fourth person opened the door from inside. As Alex Cherizard was walking up the stairs, he placed his right hand inside the rear of his pants, down to the groin area. The three individuals remained inside the building for approximately thirty seconds, out of view of Detective Pieroway.

The defendant and Rivera then left the building and returned to the park. When they entered the park, Detective Pieroway, from within the unmarked police vehicle approximately thirty to forty feet away, observed the defendant reach into his left pocket, hold out his left hand with the palm up, put his right hand into his palm, and hand something to Rivera.[2] The detective continued to watch Rivera, as she walked away from the defendant, left the park, and sat next to a man on a bench at a bus stop. Detective Pieroway left the vehicle and approached Rivera on foot. When she saw him, she threw an object to the ground, which the detective retrieved. The object was a one dollar bill containing what he

---

[1]The name of the man was not introduced in evidence at trial; Detective Robert Pieroway testified his name was "Massery or something." Because the police report identifies the man as Alex Cherizard, we shall refer to him by that name.

[2]Detective Pieroway appeared to be using his hands during his testimony to show the jury what he saw the defendant doing, but the record does not reflect what the jury saw. The prosecutor asked, "Now, you have your right hand finger [*sic*] near the center of your left palm. Can you describe what you saw at that point?" The detective replied, "He just put his hand in there like this and then it came out and handed something to Ms. Rivera." We can infer that the detective showed more with his hands than he said in his testimony because the prosecutor in closing argument told the jury, "All that we know is that he broke off a piece," and later asked the jury, "Can you see him snap off and give it to Jessica Rivera?" The record on appeal, however, does not include any evidence that the defendant broke off or snapped off a piece of anything.

described as a hard, off-white substance inside. After retrieving this object, he spoke by radio to fellow officers of the drug control unit who were in the immediate area, saying, "It's a Saturday. Arrest that guy" (referring to the defendant). He explained to the jury that "[a] Saturday is a term used in the drug control unit when we recover drugs off the buyer." He then conducted a field interrogation observation of Rivera[3] and told her she would be summonsed to Boston Municipal Court for possession of class B cocaine.

Officer Patrick L. Champagnie, another plainclothes officer assigned to the drug control unit, was in a different unmarked vehicle with Officer Kenneth Reed when he saw the defendant alone in the park. After receiving a communication from another member of the drug control unit, Officers Champagnie and Reed left their vehicle and approached the defendant, who was between one hundred and 150 feet away. When they were nearly beside him and identified themselves, the defendant dropped an object that was in his hand. Officer Champagnie picked up the object, which he described as a "tanish, yellowish colored substance with a hard texture to it."[4]

Two certificates of drug analysis from assistant analysts at the State Laboratory Institute were admitted in evidence, one certifying that the substance in the one dollar bill weighed 0.15 grams and contained cocaine, and the other certifying that the "loose substance" weighed 0.09 grams and contained cocaine.[5]

---

[3]"A 'field interrogation observation' has been described as an interaction in which a police officer identifies an individual and finds out that person's business for being in a particular area." *Commonwealth* v. *Lyles*, 453 Mass. 811, 813 n.6, 813-817 (2009).

[4]Cherizard was also arrested and was found to have $122 in his possession.

[5]There was considerable confusion as to the chain of custody of the two seized objects, and as to whether the certificates applied to the seized objects. For instance, Officer Champagnie testified that he had given the substance he seized to Officer Walsh, but Officer Walsh testified that Officer Champagnie had given him "a green herb-like substance, vegetable matter." One certificate admitted in evidence listed the defendants as "Cherizard, Alex et al," rather than Rivera or the defendant, and at trial Cherizard was not identified by name as the man with the bicycle. We do not dwell on this confusion because Detective Pieroway and Officer Champagnie identified each substance offered in evidence as the substance each had seized, and the jury reasonably could have concluded that the certificates accurately described their weight and composition. The confusion surrounding this evidence affects its weight, but not its

2. *Sufficiency of the evidence.* The trial judge denied the defendant's motion for required findings of not guilty.[6] We review the denial to determine whether the evidence offered by the Commonwealth was sufficient to permit the jury to infer that the Commonwealth has met its burden of proving the essential elements of the crimes charged beyond a reasonable doubt. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). "Our analysis asks not whether the evidence requires a finding of guilty, but whether it permits such a finding beyond a reasonable doubt." *Commonwealth* v. *Nolin*, 448 Mass. 207, 215 (2007). "A conviction may be based on circumstantial evidence alone, as long as that evidence is sufficient to find the defendant guilty beyond a reasonable doubt." *Commonwealth* v. *Platt*, 440 Mass. 396, 401 (2003). The evidence must "allow[] us to do more than 'find that there was some record evidence, however slight, to support each essential element of the offense.' " *Corson* v. *Commonwealth*, 428 Mass. 193, 197 (1998), quoting *Commonwealth* v. *Mandile*, 403 Mass. 93, 94 (1988). Nor will the evidence be sufficient if it relies on conjecture or speculation, or if it tends "equally to support either of two inconsistent propositions." *Commonwealth* v. *Corson*, *supra*, quoting *Commonwealth* v. *Rhoades*, 379 Mass. 810, 817 (1980). If a rational jury "necessarily would have had to employ conjecture" in choosing among the possible inferences from the evidence presented, the evidence is insufficient to sustain the Commonwealth's burden of proving guilt beyond a reasonable doubt. *Commonwealth* v. *Croft*, 345 Mass. 143, 145 (1962).

We conclude that, viewing the evidence in the light most favorable to the Commonwealth, a rational jury could have found that there was probable cause to believe the defendant distributed the cocaine that Rivera threw to the ground, but could not have

---

admissibility or legal sufficiency. See *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224, 230 (1992).

[6] The defendant moved for required findings of not guilty at the close of the Commonwealth's evidence. The defendant presented no evidence and renewed his motion after the judge had instructed the jury. The judge ruled the motion timely and denied the motion again. Because the close of the Commonwealth's case was the close of all the evidence, and because the judge ruled the tardy motion timely, we conclude that the defendant adequately preserved his objection to the sufficiency of the evidence at trial.

found the defendant guilty of distribution beyond a reasonable doubt. The jury reasonably could have inferred that the defendant and Rivera went to 10 East Brookline Street for the purpose of purchasing cocaine, in light of their rendezvous with Cherizard, Cherizard's reaching into his groin area as they walked up the stairs to the front door, the brevity of their stay, and their possession of cocaine minutes later.[7] However, they could not reasonably infer beyond a reasonable doubt that all the cocaine purchased was given to the defendant and that he then distributed some of it to Rivera. Because no witness observed what went on inside the building, such an inference rests solely on Detective Pieroway's observation that, after they left the building and returned to the park, the defendant gave something to Rivera that he took from his left pocket and placed in the palm of his left hand. Detective Pieroway, however, could not see what, if anything, the defendant gave to Rivera.

The Commonwealth argues that it is reasonable to infer that he was splitting a rock of "crack" cocaine with his right hand, but as noted, see note 2, *supra*, there is no evidence in the record that the defendant broke or snapped off anything with his right hand. The detective testified only that the defendant put his right hand in his left palm and handed something to Rivera. The inference that he handed cocaine to Rivera may be plausible, but cannot bear the weight of proof beyond reasonable doubt. It is as plausible, certainly plausible enough to yield a reasonable doubt, that Rivera obtained the cocaine inside the building from Cherizard and received something other than cocaine from the defendant. See *Commonwealth* v. *Senati*, 3 Mass. App. Ct. 304, 306 (1975) (acquittal of cocaine distribution charge required where "it was at least equally inferable" that alleged buyer of

---

[7]We are generous to the Commonwealth in granting this inference because the Commonwealth did not offer expert testimony as to whether drug dealers often store narcotics in their groin area, or as to the street price of this quantity of cocaine (to strengthen the inference that all or part of the $122 found on Cherizard derived from this sale). See *Commonwealth* v. *Frias*, 47 Mass. App. Ct. 293, 296 (1999) ("police officer with experience in narcotics investigations, qualifying as an expert, may . . . describe in general terms how drug transactions are carried out on the street level"). Nor did the Commonwealth offer any evidence as to whether narcotics were found in Cherizard's possession when he was arrested, which, if so, would have strengthened the inference that he was the drug dealer who had sold them cocaine.

cocaine "had possession of the cocaine throughout the transaction [if there was one]"). See also *Commonwealth* v. *Reid*, 29 Mass. App. Ct. 537 (1990).

The inference the Commonwealth seeks to draw from the detective's limited observations grows even weaker when one considers that the cocaine that Rivera threw to the ground when Detective Pieroway approached her was wrapped in a one dollar bill. Detective Pieroway's observations of the defendant's hands during the supposed distribution of cocaine is not consistent with his wrapping cocaine tightly within a one dollar bill. Because Detective Pieroway continued to observe Rivera until she threw the dollar bill containing cocaine, it would require pure conjecture to conclude that she wrapped the cocaine in a one dollar bill while the detective had her under close surveillance. The presence of the cocaine within the dollar bill is at least as consistent with Rivera's having received this cocaine inside the building as it is with her receiving it from the defendant in the park.

Moreover, Rivera was not arrested after she threw the cocaine to the ground, so no search took place incident to her arrest and no inventory search of her took place at the police station. Therefore, the finder of fact cannot know whether Rivera had an object in her possession (including coins or cash) other than the cocaine in the dollar bill that plausibly could have been the object given to her by the defendant in the park.

We do not suggest that illegal drug distribution may be proved beyond a reasonable doubt only if a witness actually sees drugs being transferred. "Small quantities of drugs are easily concealed . . . and in certain situations, an illegal drug transaction may be inferred from other circumstances even if what is transferred is not actually seen" (citations omitted). *Commonwealth* v. *Soto*, 45 Mass. App. Ct. 109, 112 (1998). Rather, we conclude that where, as here, there are two alleged sequential transactions in which the transfer of drugs was not witnessed, the Commonwealth must present evidence sufficient to establish beyond a reasonable doubt that the defendant during the second transaction distributed the drugs found in the possession of Rivera. See *Commonwealth* v. *Croft, supra* at 144-145.[8]

---

[8]Because we conclude that it was not reasonable to infer beyond a reasonable doubt that the defendant handed cocaine to Rivera while they were in the park, we need not decide, had such a transfer been proved, whether the Com-

Because the inferences from the evidence here were too weak to permit a rational jury to conclude beyond a reasonable doubt that the defendant distributed the cocaine in the one dollar bill to Rivera, we reverse the judgments of conviction of distribution of cocaine and distribution of cocaine within one hundred feet of a park, and order that judgments of acquittal enter on those charges. The evidence of the defendant's possession of the cocaine he threw to the ground when approached by Officers Champagnie and Reed was more than sufficient to sustain his conviction of possession of cocaine, so we now turn to the legal issues relevant to his conviction of that charge.

3. *Motion to suppress.* Prior to trial, the defendant filed a motion to suppress, claiming that he was stopped without reasonable suspicion and arrested without probable cause, and that the fruits of the warrantless search of his person arising from the stop and arrest should be suppressed. In support of his motion, the defendant attached an affidavit, which asserted that on September 23, 2006, police officers ran up and surrounded him, handcuffed his arms behind his back, and searched him without his consent.[9]

monwealth proved beyond a reasonable doubt that this reflected the defendant's transfer of cocaine he had just purchased, which would constitute distribution, or his division of the cocaine that they had simultaneously and jointly acquired, which would constitute joint possession. See *Commonwealth* v. *Johnson*, 413 Mass. 598, 604 (1992) ("Where two or more persons simultaneously and jointly acquire possession of a drug for their own use intending only to share it together, their only crime is simple joint possession"). See also *Commonwealth* v. *Blevins*, 56 Mass. App. Ct. 206, 209-210 (2002) (jury may find joint possession where defendant and two companions each participated in negotiation and were present when drugs were paid for and received); *Commonwealth* v. *Minor*, 47 Mass. App. Ct. 928, 928 (1999) ("To be a joint possessor, one must actively and personally participate in the initial procurement of the drugs"). Nor need we address whether the judge's denial of the defendant's request for a jury instruction on joint possession, as a lesser included offense of distribution, was reversible error.

[9] The affidavit in its entirety reads:

"I, Valentine Rodriguez, state the following, which is offered in support of my motion to suppress evidence, is true to the best of my knowledge, information, and belief:

"1) I am the defendant in the above-entitled matter.

"2) I am 50 years old.

"3) On the afternoon of September 23, 2006, I was walking in Boston, Massachusetts.

The Commonwealth did not object to the adequacy of the defendant's affidavit. However, at the hearing, before evidence was presented, the Commonwealth asked the judge to deny the defendant's motion without an evidentiary hearing on the ground that the cocaine he was charged with possessing was found on the ground near the defendant, and that nothing was seized or taken from him. When the motion judge[10] asked defense counsel the basis of her request to suppress the cocaine found on the ground, defense counsel responded that the defendant was charged with constructive possession of that cocaine and the "threshold inquiry" of the defendant was not based on "reasonable articulable facts." The judge then asked the Commonwealth to call its first witness, implicitly denying the Commonwealth's request that the defendant's motion to suppress be denied without an evidentiary hearing.

The Commonwealth called Detective Pieroway, who testified much as he did subsequently at trial. Detective Pieroway, however, did not testify to the stop or arrest of the defendant, because he was not present when it occurred; he simply testified that he instructed Officers Champagnie and Reed to arrest the defendant for distribution of cocaine. The Commonwealth called no further witnesses; nor did the defendant. When the judge asked the prosecutor why the cocaine should not be suppressed in view of the fact that the judge had heard nothing about it at the evidentiary hearing, the prosecutor argued that he had established that the police had reasonable suspicion, and reiterated that the drugs were found next to the defendant, not on his person (although

"4) Several people who identified themselves as Boston police officers ran up and surrounded me.

"5) The officers grabbed my arms and put them behind my back. They also put handcuffs on me. The officers then searched me.

"6) I did not consent to this arrest and search, and I was not shown a warrant.

"7) I was eventually brought to a police station, where I was booked and placed in a cell.

"8) This affidavit does not include all the facts and circumstances known to the affiant about this event. It was prepared for the purpose of litigating the accompanying Motion to Suppress Evidence."

[10]The motion judge was not the trial judge.

there was no evidence at the motion hearing as to where the drugs had been found). The judge ruled that the drugs were not seized from the defendant because they were not found on him, and denied the motion to suppress.

The judge's ruling was clear error. The only finding of fact the judge made — that the drugs were not found on the defendant's person — was based on the oral representation of the prosecutor, not the evidence at the hearing. The only ruling of law — that drugs could not be seized from the defendant unless they were found on his person — was also erroneous. No one has a reasonable expectation of privacy in items retrieved from the ground on a public park. However, if the defendant dropped the drugs on the ground *after* he had been stopped by the police, that is, after a reasonable person in view of all the surrounding circumstances would have believed that he was not free to leave, the drugs, even though found on the ground, could have been suppressed as the fruit of an unconstitutional seizure of his person in violation of art. 14 of the Massachusetts Declaration of Rights if the stop were not supported by reasonable suspicion. See *Commonwealth* v. *Depina, ante* 238, 242 (2010); *Commonwealth* v. *Stoute*, 422 Mass. 782, 789 (1996); *Commonwealth* v. *O'Laughlin*, 25 Mass. App. Ct. 998, 999-1000 (1988). See also *Commonwealth* v. *Borges*, 395 Mass. 788, 796 (1985) (defendant's attempt to dispose of evidence not "an independent, intervening act sufficient to justify a subsequent arrest where the disposal is in direct and immediate response" to illegal stop). If he dropped the drugs *before* he was stopped, then the drugs could not be the fruit of the seizure, and therefore would not be subject to suppression regardless of the constitutionality of the subsequent stop. See *Commonwealth* v. *Battle*, 365 Mass. 472, 475 (1974). See also *Commonwealth* v. *Pimentel*, 27 Mass. App. Ct. 557, 560-562 (1989) ("pivotal question . . . is whether the police stopped or seized the defendant before he dropped his drugs"). Because no evidence was presented at the motion hearing whether the stop of the defendant occurred before or after he dropped the drugs on the ground, we cannot assess whether the drugs on the ground were the fruit of the stop. Because there was also no evidence whether the stop of the defendant occurred before or after the retrieval of the drugs dropped on the ground by Rivera, we cannot assess whether the defendant's stop was supported by reasonable suspicion.

To determine what action is appropriate in the wake of the motion judge's errors, we first set forth what should have happened. We recently said in *Commonwealth* v. *Mubdi, ante* 385, 389-390 (2010):

> "Where a defendant has filed a motion to suppress alleging an unconstitutional search or seizure, the detail required in the motion and accompanying affidavit under [Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004),] must be sufficient to accomplish two practical purposes. First, it must be sufficient to enable a judge to determine whether to conduct an evidentiary hearing. See *Costa* v. *Commonwealth*, 440 Mass. 1003, 1004 (2003), quoting *Commonwealth* v. *Santosuosso*, 23 Mass. App. Ct. 310, 313 (1986) (one purpose of rule 13 [a] [2] is to provide judge with 'statement of anticipated evidence . . . to meet the defendant's initial burden of establishing the facts necessary to support' motion). An evidentiary hearing is necessary only when the defendant has alleged facts that, if true, would establish (1) that evidence was obtained through a search or seizure for which the Commonwealth must prove probable cause, reasonable suspicion, or consent to search; and (2) that the defendant has standing to challenge the constitutionality of the search or seizure. Cf. *Commonwealth* v. *Costa*, 65 Mass. App. Ct. 227, 228 n.1 (2005). Second, the affidavit required under rule 13 (a) (2) must be sufficiently detailed to give fair notice to the prosecution of the particular search or seizure that the defendant is challenging, so that the prosecution may determine which witnesses it should call and what evidence it should offer to meet its burden of proving probable cause, reasonable suspicion, or consent. *Costa* v. *Commonwealth, supra,* quoting *Commonwealth* v. *Santosuosso, supra* (second purpose of rule 13 [a] [2] is to give Commonwealth 'fair notice of the specific facts relied on in support of the motion')."

Because neither the defendant's motion to suppress nor his affidavit made clear that the defendant was contending that the drugs retrieved by the police from the ground in the park were the fruit of an unlawful stop,[11] the Commonwealth, before the

---

[11]We do not suggest that the defendant was required to assert that he possessed the drugs and dropped them when he saw the police approach to stop

evidentiary hearing, should have asked for a more particularized affidavit or moved that the motion to suppress be denied without a hearing for failing to provide the Commonwealth fair notice as to the seizure he was challenging. *Commonwealth* v. *Mubdi*, *supra* at 390. Alternatively, the motion judge could have ordered a more particularized affidavit on her own motion. *Id.* at 390 n.6. By way of such an accompanying affidavit, the judge and the Commonwealth would have understood the precise basis for the defendant's motion to suppress and whether there was a need for an evidentiary hearing to resolve the motion. Because the defendant failed to articulate the basis of his suppression claim, and neither the prosecutor nor the judge moved for a more particularized affidavit or otherwise obtained clarification of the defendant's suppression claim, confusion reigned as to what needed to be proved at the motion hearing.

Generally, the Commonwealth waives any objection to the particularity of the defendant's affidavit pursuant to rule 13 (a) (2) when it fails to move to dismiss the motion to suppress or for a more particularized affidavit. See *id.* at 390-391. There is no waiver here because, by asking the judge to deny the motion to suppress without a hearing because no one has a reasonable expectation of privacy in the ground of a public park, the Commonwealth communicated to the judge and the defendant its confusion as to the basis of the defendant's motion, which is the same information that would be communicated through a motion to dismiss or for a more particularized affidavit, and accomplished much the same purpose. This is not a case in which the motion to suppress was heard without any complaint by the Commonwealth as to the particularity or sufficiency of the defendant's motion; instead, it was a case in which the Commonwealth's concerns were not adequately addressed by either

or arrest him. Any such admission of guilt of the crime with which he is charged could be used to impeach him at trial. See *Commonwealth* v. *Mubdi*, *ante* 385, 389 n.4 (2010). It would be "unfair to place the defendant in the difficult position" of having to acknowledge possession in order to obtain a suppression hearing when that acknowledgment could be used to impeach him at trial. *Id.* at 392 n.7. *Commonwealth* v. *Amendola*, 406 Mass. 592, 600 (1990). The defendant could have established a nexus between the stop and the retrieval of the drugs from the ground by asserting that, after stopping him, the officers recovered from the ground an object they allege to be cocaine and that they allege he dropped when they approached him.

the defendant or the judge. In view of these unusual circumstances, we conclude that the fair disposition is to vacate the judge's denial of the motion to suppress, as well as her findings of fact and conclusion of law, and remand for a new motion hearing.[12]

4. *Certificate of drug analysis.* On appeal, the defendant argues that the admission of the certificate of drug analysis

[12]Because a new motion hearing may be held, we address an error committed at the earlier hearing. The motion judge sustained the defendant's objection to the admission of a statement made by Rivera to Detective Pieroway after he stopped her and retrieved the one dollar bill containing cocaine that she had thrown to the ground. Although the defendant did not state the basis of the objection and the judge did not explain her ruling, we infer that the basis for making and sustaining the objection was hearsay. While Rivera's statement to the detective would be inadmissible hearsay at trial, it was admissible at a motion to suppress hearing, where out-of-court statements may be introduced if they bear on whether the police had probable cause or reasonable suspicion to justify the subsequent stop or arrest of the defendant. See *Commonwealth* v. *Fletcher*, 435 Mass. 558, 567 (2002); *Commonwealth* v. *Young*, 349 Mass. 175, 179 (1965).

We also consider whether the defendant bears the burden of proving that the stop preceded the dropping of the drugs. We have said that, "[a]lthough the burden of establishing that a warrantless search is reasonable, and therefore lawful, is on the Commonwealth . . . the burden with respect to the threshold question whether a search in the Fourth Amendment [to the United States Constitution] sense occurred at all is on a defendant" (citation omitted). *Commonwealth* v. *D'Onofrio*, 396 Mass. 711, 714-715 (1986). Where a defendant contends that contraband he is charged with possessing has been obtained through an unconstitutional search, the defendant at a suppression hearing has the burden of proving that there was an expectation of privacy in the place where the evidence or contraband was found. See *Commonwealth* v. *Mubdi*, *supra* at 393; *Commonwealth* v. *Rice*, 441 Mass. 291, 295 (2004). The defendant does not bear that burden of proof where, as here, a defendant contends that evidence or contraband was the fruit of an unconstitutional seizure of his person through a stop or arrest. See 6 W.R. LaFave, Search and Seizure § 11.2(b), at 49 (4th ed. 2004) (where issue is whether defendant abandoned object, burden on prosecution because of presumption against waiver of constitutional rights). The defendant's burden on these motions to suppress is the burden under Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004), i.e., to identify with particularity in a motion and affidavit the alleged seizure, the fruits at issue, and the causal connection between the seizure and the fruits. See *supra* at 588. Once a defendant has so specified, the Commonwealth bears the burden of proving either that the seizure was supported by probable cause or reasonable suspicion, or that the discovery of the fruits did not derive from the seizure and required no predication because, for instance, the fruits were obtained before the seizure from a place where there was no reasonable expectation of privacy.

(certificate) regarding the substance found next to him in the park, without testimony by the analyst with the State laboratory who conducted the testing, violated his confrontation rights under the Sixth Amendment to the United States Constitution. In view of the United States Supreme Court's decision in *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009), it was error to admit the certificate.

The defendant objected to the admission of the certificate, but not on confrontation grounds. Rather, he contended that the Commonwealth had failed adequately to establish that the substance analyzed in the certificate was the substance retrieved from the ground next to him at the time of his arrest. We need not, however, debate whether the objection properly preserved the defendant's constitutional challenge because we recently concluded in *Commonwealth* v. *Vasquez, ante* 350, 352 (2010), that even if no objection had been lodged, the defendant is entitled to review of the constitutional error "as though preserved by proper objection at trial." As a result, we determine whether the admission of the certificate was harmless beyond a reasonable doubt. *Id.* at 355-359.

Because the defendant is charged with possession of cocaine, the burden is on the Commonwealth to prove beyond a reasonable doubt that the substance recovered from the defendant was cocaine. See *Commonwealth* v. *Farley*, 443 Mass. 740, 745 (2005) (Commonwealth must "prove each and every element of the crime beyond a reasonable doubt"). The Commonwealth may do so by way of either chemical analysis or circumstantial evidence. See *Commonwealth* v. *McGilvery*, 74 Mass. App. Ct. 508, 511 (2009). However, under harmless error review, it is not enough for the Commonwealth to show that the evidence apart from the certificate was " 'sufficient' to convict the defendant" or that the certificate was " 'consistent' with the admissible evidence." *Commonwealth* v. *Tyree*, 455 Mass. 676, 701 (2010), quoting *Commonwealth* v. *Dagraca*, 447 Mass. 546, 554-555 (2006). Rather, the other evidence that the substance possessed was cocaine would have to be so overwhelming as to "nullify any effect" the admission of the certificate " 'might have had' on the fact finder or the [verdicts]." *Commonwealth* v. *Vasquez*, *supra* at 362, quoting *Commonwealth* v. *Tyree*, *supra* at 704 n.44.

Here, the Commonwealth failed to establish that the error in admitting the certificate was harmless beyond a reasonable doubt. See *Commonwealth* v. *Vardinski*, 438 Mass. 444, 452 (2003) (prosecution bears burden of establishing that error was harmless beyond reasonable doubt). The Commonwealth relied solely on the certificate to prove that the substance was cocaine. No independent evidence was presented to establish the composition of the substances. Neither Detective Pieroway nor Officer Champagnie performed a "field test." See *Commonwealth* v. *Vasquez*, *supra* at 364. Apart from the certificate, the only suggestion that the substance was cocaine came from the testimony of Officer Champagnie, who said that the "tanish, yellowish looking object" he picked up off the ground looked and felt like crack cocaine, but that testimony was ordered struck from the record. Because the certificate was the only evidence presented to establish the identity of that substance, the error of admitting the certificate was not harmless beyond a reasonable doubt. Therefore, we reverse the judgment of conviction and remand for a new trial.

5. *"It's a Saturday."* Because the defendant may be retried on the charge of cocaine possession, we address one other evidentiary issue that may arise at retrial. At trial, the judge, over objection, allowed Detective Pieroway to testify that he spoke to Rivera and conducted a "field interrogation observation" of her before informing Officers Champagnie and Reed by radio that, "It's a Saturday. Arrest that guy." Detective Pieroway explained that "Saturday" is the code word used by police officers with the drug control unit when they recover drugs from the buyer. Admission of the statement, "It's a Saturday," with the accompanying explanation, was error.

Through this testimony, the detective essentially offered his opinion that Rivera had bought cocaine from the defendant. Such testimony would not have been admissible if he had been directly asked for his opinion. See *Commonwealth* v. *Woods*, 419 Mass. 366, 375 (1995) (police officers' testimony that defendant involved in drug transaction impermissible expert opinion that defendant guilty of charges). It does not become admissible simply because it was elicited in a less direct fashion.

6. *Conclusion.* Because the evidence was insufficient to sup-

port the judgments of conviction of distribution of cocaine and distribution of cocaine within one hundred feet of a park, we order that judgments of acquittal enter on those charges. We reverse the judgment of conviction of possession of cocaine, and remand for a new motion hearing and trial consistent with this opinion.

*So ordered.*